**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| **CHEVERA BROWN** *et al* | |
| *Plaintiffs*, | |
| **v.** | **Case No.: 1:21-cv-1000-JKB** |
| **ROBERT FRAZIER,** *et al.* | |
| *Defendants.* | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS HILLMAN & FARNSWORTH, MOTION TO QUASH AND MOTION TO DISMISS

COMES NOW Defendants Earl Edward Farnsworth Jr.("Farnsworth"), and Robert H.; Hillman ("Hillman), by and through counsel, and hereby submits its Memorandum in Support of their Motion to Quash the Summons and or to their Motion to Dismiss the Amended Complaint ("Complaint") filed by Plaintiff Chevera Brown-McLean and Clint McLean ("McLean" or "Plaintiff") pursuant to Rules 12(b)(5), 12(b)(6) and Rule 12(e) of the Federal Rules of Civil Procedure, the Defendants expressly adopt the arguments raised in responsive pleadings and memoranda filed by its co-Defendants, to the extent such arguments, claims, and defenses are common to the positions and standing of these Defendants.[1] For its Memorandum in Support of its Motion to Quash and Motion Dismiss, these Defendants respectfully state as follows:

## I.   INTRODUCTION

---

[1] The Court should note that these defendants were alleged served with process in a bulk mail drop in a single envelope containing in addition to their summons, summons for Samuel I White P.C. ("White"), William Ronald McMahan Residential Credit Opportunities Trust III ("RCO Trust") and William A. White President of Samuel I White. A review of the Court docket does not indicate any of them are parties to the action but they were served or attempted to be served with a summons in their own regard.

This is nothing more than a collateral challenge to a foreclosure proceeding that has already proceeded to sale, been ratified by the Maryland State Circuit Court which has now granted possession to the foreclosure purchaser.

Initially the factual pattern provided by the Plaintiff does not reflect the facts that arose during the State Court foreclosure action discussed below. Accordingly, these Defendants provide the following factual allegation for the benefit of this Court so this Court can try and decipher the instant action and why it must be dismissed.

This is a straightforward case concerning a purchase money mortgage loan default in 2014 of a loan between the Plaintiffs and the named Defendant SunTrust Mortgage Inc. that originated 10 months before the default. Eventually since the default, the loan has been serviced and owned by other secured parties and was eventually acquired by the RCO Trust. FCI is the current loan servicer for RCO Trust. AMIP is the asset manager for the RCO Trust. Samuel I White P.C. was retained counsel overseeing the possession action (not the underlying foreclosure proceeding) in the Maryland foreclosure proceeding (Circuit Court of Baltimore County of Maryland, Case No. 03-C-16-011887) ("the Foreclosure Action") and certain appeals filed by the Plaintiffs in the Maryland Court of Special Appeals (as noted below). Defendants Hillman and Farnsworth are attorneys with the firm of Samuel I White PC and handled portions of the possessions action as well as the appeals filed by the Plaintiffs in the Maryland Court of Special Appeals (Clint McLean et al  vs Keith Yacko et al APPEAL NO.  CSA-REG-0930-2020).

Initially, the instant matter arises out of a foreclosure action which has been litigated extensively in the Circuit Court. See Exhibit A the Foreclosure Actions Dockets.

The Plaintiffs acquired the property on December 19, 2013, and obtained a purchase money loan from First Home Mortgage Corporation in the original amount of $317,536.00 (the "Loan").

The loan was thereafter assigned to Mortgage Electronic Registration Systems Inc ("MERS") for indexing purposes.

MERS then assigned the Loan to SunTrust Mortgage Inc., on October 7, 2014.

Some Ten or Eleven months after originating the loan Plaintiffs, Plaintiffs defaulted. On November 17, 2015, the secure party accelerated the lien for the payment default. The amount then due by the Appellants was $343,258.85, which was then due to SunTrust Mortgage, Inc

On or about March 23, 2016, Defendant SunTrust Mortgage Inc., appointed certain substitute trustees namely, Defendants Robert E. Frazier, Gene Jung, Laura D. Harris, Thomas W. Hodge, Thomas J. Gartner, Robert M. Oliveri, David M. Williamson and Keith M. Yacko (collectively the "Substitute Trustees"), to replace those named in the Deed of Trust, so as to proceed with foreclosure of the lien.

The Loan was thereafter assigned on December 6, 2016, to the Secretary of Housing and Urban Development, by an assignment duly recorded.

On December 30, 2016, the Secretary of Housing and Urban Development, sold the loan, releasing the FHA guarantee, and assigned same to Wilmington Savings Fund Society FSB d/b/a Christiana Trust, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2016-4, as is evidenced in an assignment of record.

Thereafter, on or about the same day, December 30, 2016, Wilmington Savings Fund Society FSB d/b/a Christiana Trust, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2016-4 assigned the Loan to Defendant Wilmington Savings Fund Society FSB d/b/a Christiana Trust, as Owner Trustee of Residential Credit Opportunities Trust III. It should be noted that the Promissory Note is indorsed "in Blank" and that Wilmington Savings Fund Society FSB d/b/a Christiana Trust, as Owner Trustee of

Residential Credit Opportunities Trust III is in possession of the original executed promissory note endorsed "in blank". FCI Lenders Services Inc.("FCI") is the loan servicer for RCO Trust and American Mortgage Investment Partners Management LLC. ("AMIP") is the asset manager for RCO Trust.

An Order to Docket Foreclosure for the property of 2023 Case Road, Baltimore, Maryland, 21222, was originally previously docketed on April 8, 2016 in the Circuit Court for Baltimore City, Maryland, Case No. 24-O-16-000947. See Case State Action Docket as Exhibit A.

Upon information from the Substitute Trustees, through mistake, inadvertence or error, the case was filed in Baltimore City Circuit Court rather than Baltimore County Circuit Court despite the paperwork all indicating that the property was located in Baltimore County. It appears that the vendor filing the case for the Substitute Trustees mistakenly docked same with the clerk in Baltimore City Circuit Court, despite the fact that all the documents all reference Baltimore County and the check for the filing fees was made payable to Baltimore County. Despite this the Clerk of the Circuit Court for Baltimore City accepted the Order to Docket and the filing fee. See Exhibit A.

The Plaintiffs had filed numerous filings regarding the issue of venue in the Baltimore City case. The majority of these motions revolved around the assertion that the case is filed in the incorrect venue. See Defendants filings in case 24-O-16-000947 (See docket entries 5, 6, 7, 8, 11, 12, 13, 15, 16, 17, 18, 22/3, 22/4, 23/0, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47 Apx P1 to P-10). To the extent that any of the motions filed in the present action refer to the venue issue, those claims are moot as the case was transferred to the Circuit Court for Baltimore County on November 29, 2016.

Many of the filings submitted to the Circuit Court after the venue issue was resolved were repetitive duplicates of previous filings. For example, docket entry 5 and 15; docket entry 6 and 17 and docket entry 13 and 16 (Apx P18 & 19). Also, the repetitive filing of 26, 27, 28, 29 and 30 (Apx P20-21) all filing a Motion to Compel Discovery in a foreclosure action. Plaintiffs also filed a Notice of Removal to the Federal District Court in October 2016, but the case was never removed, only the notice filed. See Exhibit A Docket 19.

Subsequently, a mediation was scheduled. All parties appeared at the Mediation hearing in October 2016, but the Judge continued the hearing as the file was being transferred to Baltimore County and would be rescheduled.

On May 10, 2017, the Court denied a number of the Plaintiff's motions (See Exhibit A Docket entries 51, 52, 53, 54, 56, 57 and 58,) while on that same date (May 10, 2017) the Plaintiff filed triplicate requests for a hearing (See Exhibit A Docket entries 59, 61 and 64) accompanied by another motion for reconsideration of the Order of Dismissal (Exhibit A Docket entry 60) a Verified Affidavit (Exhibit A Docket entry 62) and an interlocutory appeal (Exhibit A Docket entry 63)

On June 12, 2017, the Plaintiffs filed eleven (11) more motions, many of which are duplicates of those already enumerated (Exhibit A Docket entries 69 thru 79).

On August 28th and 29th, 2017 the Plaintiffs once again filed thirty (30) motions and hearing requests. (Exhibit A Docket entries 83 thru 112).

On September 1, 2017, the Plaintiffs filed another request for a hearing (see Exhibit A Docket entry 113) and on September 5, 2017, filed another seven (7) duplicate motions and hearing requests. (See Docket entries 114 thru 120)

This request was then followed on September 15, 2017, where the Plaintiffs filed three motions (See Docket entries 122-124) and on September 19, 2017, another five motion were filed. (See Docket entries 125-129).

Prior to the filing regarding the possessions the Plaintiff's had filed 35 pleadings in the Baltimore City case and since the transfer to Baltimore County have filed another ninety-five (95) pleadings.

From the inception of this action, the pro se Plaintiffs have submitted a series of vexatious, baseless, and repetitive filings, and repeatedly raising the same or similar issues all for the purposes of delaying the foreclosure action against the property.

The property was sold at public auction on January 12, 2018, and reverted to the noteholder, the Defendant Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust As Owner Trustee Of The Residential Credit Opportunities Trust. III. The sale was thereafter ratified after a lengthy delay caused by the Plaintiffs excessive filings on September 17, 2020.

The appeal in the Maryland Court of Special Appeals was then docketed on October 15, 2020. The matter has been briefed and is pending decision and was being handled for the Substitute Trustees and RCO Trust by counsel the Defendant Robert H. Hillman ("Hillman") is affiliated with the Defendant law firm Samuel I White ("White").

On February 5, 2021, a motion for possession was filed by the foreclosure Purchaser and its counsel Defendant Farnsworth, who is affiliated with Defendant law firm White. The Court granted the possession on March 12, 2021. The Writ of Possession was sought on May 28, 2021, and its execution is pending. No bond or other supersedeas bond has been posted to effectuate any stay. The Circuit Court issued a stay of the proceedings on June 11, 2021, and then terminated the stay on July 14, 2021. In the interim, the Plaintiffs have sought the recusal of the State Court Judge

Alexander (April 26, 2021), as well as what is believed to be the third attempted untimely removal of the Foreclosure Action to this Court on April 23, 2021, all to further delay the proceedings.

It appears that the instant action was also filed in this Court on April 23 2021, by the Plaintiffs in a veiled attempt to delay and further hinder the ratified foreclosure sale and pending possessory right of the foreclosure purchaser RCO Trust.

Service as to the Defendants Samuel I White P.C., William Ronald McMahan, Owner, Residential Credit Opportunities III Maryland LLC., Earl Edward Farnsworth Jr., Samuel I White P.C. and William A. White President, Samuel I White P.C. was attempted by United States Priority Mail (not certified nor restricted mail) on July 14, 2021 all being delivered to the office of Robert H. Hillman. See Exhibit B No other service has occurred to any of the other RCO Trust Defendants

These Defendants then filed the instant Motion to Quash and to Motion to Dismiss the instant summons and Amended Complaints where were attached to the summons reference above.

## DISCUSSION

### Motion to Quash or Dismiss - Insufficient Service of Process

Federal Rule of Civil Procedure 4(e)(2) of the Federal Rules of Civil Procedure provides that an individual may be served:

> [B]y delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Rule 4(e)(1) provides that an individual may be served in accordance with the law of the state in which the district court is located, under the rules for service of a summons on the defendant in an action brought in state court.

In Maryland in personam service of process by mail is effected pursuant to Md. Rule 2-121(a) and requires the delivery of all papers and pleadings docketed by a party. Md Rule 2-121(a)(2). Pursuant to the Rule:

> (a) Generally. Service of process may be made within this State or, when authorized by the law of this State, outside of this State (1) by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it; (2) if the person to be served is an individual, by leaving **a copy of the summons, complaint, and all other papers filed with it** at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; or (3) **by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it <u>by certified mail requesting: "Restricted Delivery</u>--show to whom, date, address of delivery.** Service by certified mail under this Rule is complete upon delivery. (bold underlines emphasis added)

In the instant case, only the summons and the 'amended' complaint were delivered in a single US Postal Service Priority mail pouch shipped to Robert Hillman (Md. Resident Agent) for Samuel I White P.C., William Ronald McMahan, Owner, Residential Credit Opportunities III Maryland LLC., Earl Edward Farnsworth Jr., Samuel I White P.C. and William A. White President Samuel I White P.C. (See Exhibit B US Postal Mail mail label).

Initially, the US Postal Priority Mail package contained summons's for Samuel I White P.C. and for William A White President of Samuel I White, neither of whom are listed as party Defendants in the litigation. It is thus unclear why summons were issued for them. See online party delineation in this case before this Court.

Secondly, assuming the above-named parties are proper, then the focal question before this Court is whether Plaintiff properly served the individual Defendants in accordance with any of the methods listed in Md. Rule 2-121(a) as effected by FRCP Rules 4(e)(1) or 4(h)(1). The affirmative answer is no.

These Defendants, Samuel I White P.C., William Ronald McMahan, Owner, Residential Credit Opportunities III Maryland LLC., Earl Edward Farnsworth Jr., Samuel I White P.C. and William A. White President Samuel I White P.C. move to quash or, in the alternative, to dismiss service under Rule 12(b)(5) on the basis that the summons and complaint were not properly served on them in conformity with Rule 4(e)(1) and Maryland Rule 2-121(a) or Rule 4(h)(1). They contend that the postal service on these persons and entities only left copies of the summons and the amended complaint (no original complaints nor other pleadings docketed by the Plaintiffs were included) and were not sent by certified mail return receipt or restricted delivery and were not delivered to a designee, officer or general agent addressed with authority to accept papers or pleading on behalf of these parties. First, under Maryland law for service by FRCP 4(e)(1) , the Maryland Rules require restricted or certified mail return receipt is permitted under the code- there is no mention of a priority mail mailing in the Code.

Secondly, the summons for Samuel I White PC., names Daniel Pesachowitz as the resident agent in Maryland for whom service was not made. William A White, an individual is president of Samuel I White P.C. and was not served in his individual capacity as is the case for Earl Edward Farnsworth Jr., and Ronald McMahan. None of these individuals have authorized Robert Hillman to accept service on their behalf and their summons was merely packed in the same envelope as that of Samuel I White P.C. While Hillman is an assistant vice president of Samuel I White P.C. he is not the resident agent or otherwise authorized to accept service for the professional legal corporation, none of these individual Defendants maintain their residence or usual place of abode at 6100 Executive Blvd Suite 400 Rockville Maryland, but in Virginia Beach Va., (White and Farnsworth) and in Seal Beach CA (Defendant McMahan), and neither Mr. Hillman nor Mr. Pesachowitz is authorized to accept service for them. As for William Ronald McMahan, the

alleged "Owner" of Residential Credit Opportunities III Maryland LLC., it is admitted that the entity is a limited liability company which according to Maryland Assessment and Tax Records was dissolved in December 2020. Once dissolved, Robert H. Hillman is no longer the resident agent for the (dissolved) entity and could not accept service for Mr. McMahan individually nor for the dissolved limited liability company who must be served in conformity with Md Rule 2-124(h)[2]. See Exhibit B SDAT Registration. Though Hillman is counsel for the party RCO in the foreclosure action and appeal, he was not expressly authorized to accept service for the dissolved limited liability company. In essence, after a dissolution, absent a statutory provision, the agency relationship between the corporation, as principal, and its local resident agent, as agent, ceased; the agent no longer possessed powers to act for its principal. *Thomas v. Rowhouses, Inc.*, 206 Md. App. 72, 82, 47 A.3d 625, 631 (2012) (at common law, the dissolution of a corporation revoked the authority of the agent who was authorized to receive service of process or other notices). The relationship between the entity and its resident agent is purely contractual. Because the entity had been dissolved, the company should have made service upon the secretary of state. See *Int'l Pulp Equip. Co. v. St. Regis Kraft Co.*, 54 F. Supp. 745, 746 (D. Del. 1944)(citing Delaware law which is similar to Maryland law). Accordingly, it is presumed to have been either insufficiency of process or insufficiency of service of process to serve the former resident agent of a dissolved entity, but in either case process must be quashed as to this and the other Defendants.

If a defendant is not properly served, then a federal court lacks jurisdiction over that defendant. *Adams v. AlliedSignal General Aviation Avionics*, 74 F.3d 882, 885 (8th Cir. 1996) (citing *Printed Media Services, Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993)). In the

---

[2] Md Rule 2-124(h) provides "(h) Limited Liability Company. Service is made upon a limited liability company by serving its resident agent. If the limited liability company <u>has no resident agent</u> or if a good faith attempt to serve the resident agent has failed, service may be made upon any member or other person expressly or impliedly authorized to receive service of process. (Emphasis added)

absence of express authorization or agency, an individual defendant must be served in accordance with Rule 4(e)(2). *Tanner v. Presidents--First Lady Spa, Inc.*, 345 F. Supp. 950, 958 (E.D. Mo. 1972) (service on majority shareholder defendant found improper because defendant was not personally served in accordance with Missouri law).

The record indicates that the individual Defendants have not been properly served with process because Mr. Hillman was not authorized to accept service on their behalf, that there was never any request by the Plaintiffs for Mr. Hillman to see if he was authorized to accept service, and, further, they have not voluntarily entered an appearance. As a result, the Court lacks jurisdiction over these individual Defendants except to seek to quash the summons served.

In the alternative "[I]n certain circumstances, courts have granted a [pro se] plaintiff the opportunity to perfect inadequate service of process, rather than dismissing the case for failure to comply with Rule 4." *Hampton v. Comey*, No. 14-CV-1607 (ABJ), 2016 U.S. Dist. LEXIS 15064, 2016 WL 471277, at *10 (D.D.C. Feb. 8), aff'd, No. 16-5058, 2016 U.S. App. LEXIS 20191, 2016 WL 6238558 (D.C. Cir. Sept. 8, 2016). But the court here has already had a lengthy period of pleadings where the Plaintiff has not sought to serve the Defendants with the pleading and there is no reason that this Court should provide the Plaintiffs additional opportunities. The action was docketed on April 23, 20201 and this is the first attempt by the Plaintiffs to serve over the preceding four months. Again, the only pleading in which service has been attempted is the amended complaint despite the action having been filed in April 2021. Because of the past history of filings appeals in this and state Courts, because the Plaintiffs still has not complied with Rule 4, the court should grant Defendants' Motion to Quash the summons and dismiss as to the Individual Defendants for failure to timely and properly effectuate service pursuant to FRCP 4(m). Here the Plaitiffs have not attempted to serve and failed to effectively complete service within the 90 day

time frame after the original complaint was filed on April 23, 2021. See *Johnson v. District of Columbia*, 65 F. Supp. 3d 92, 94 n.2 (D.D.C. 2014), (dismissing for insufficient service of process where pro se plaintiff had "yet to comply with the court's orders to provide a service address"), aff'd, 927 F.3d 539, 441 U.S. App. D.C. 453 (D.C. Cir. 2019). In the alternative, this Court must grant the motion to quash each summons serving the amended complaint.

## MOTION TO DISMISS -FAILURE TO STATE A CLAIM

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of a complaint." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). A complaint will survive such a motion only where it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a complaint must contain enough factual allegations "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. To satisfy this standard, a complaint must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 at 678 (internal citations and quotation marks omitted). Moreover, the Court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp*., 444 F.3d 312, 319 (4th Cir. 2006) (internal quotation marks omitted). *See also Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) ("Nor must we accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

First of all, the Amended Complaint fails to assert ay substantive claims for which relief can be granted.

Secondly, the very nature of the drafting of the First Amended Complaint not only prevents any of the Defendnats to understand what they are being sued for, but each claim is barred and or fails to recite any cause of action upon which relief can be granted. Accordingly, the Amended Complaint must be dismissed.

## ARGUMENT

### A. Plaintiff fails to state a claim that complies with Rules 8(a)(2) and 10(b)

The Federal Rules of Civil Procedure provide, in relevant part, that all pleadings which state a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the pleading standard prescribed by Rule 8(a) does not require a plaintiff to set forth "detailed factual allegations," it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8(a)(2) requires the plaintiff "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 555 & n.3. In this Amended Complaint, the Plaintiffs fail to meet this minimal standard.

The Plaintiffs diatribe is 86 pages of multi-sentence paragraphs which at best is confusing and fails to assert any substantive claims against anyone. Headers refer to certain causes of action, certain paragraphs refer to other causes of action and still paragraphs within certain causes of action all of which are multi-sentenced matters recite still other causes of action with the added conclusions and resuscitation of case law, makes the claims unfollowable. There is just no way to answer with denials or admissions as to how the amended complaint is drafted. Indeed, this Court refers to the Amended Complaint in its recent Memorandum Order denying Plaintiffs unilateral

filed injunctive claim (ECF 7) as reciting the claims as being for "Fraud, Racketeering, Abuse of Process, Conspiracy, Wrongful Foreclosure, and Violations of Civil Rights and Application for Temporary Restraining Order and Injunctive Monetary and Declaratory Relief" . Yet a review of the Amended Complaint appears to assert the claims of (1) Judicial injustice  claiming a violation of 42 USC §1983, violation of Article 5, 14  of the US Constitution and Md Real Property Article §§14-201 and 7-101 ( ECF 6 page 28 of 860); (2) Injunctive relief  (ECF 6 pages 31 of 86, and 78 of 86); (3) Violation of the FDCPA 15 USC §1692 et seq (p ECF 6 ages 34 of 86, 61 of 86, 66 of 86 and 72 of 86); (4) Violation of Truth in Lending Act (ECF 6 pages 41 of 86 and 62 of 86 and 72 of 86); (5) Jurisdiction (ECF 6 page 42 of 86); (6) Breach of Contract (pages 62 of 86, 68 of 86, and 72 of 86 ); (7) Fraud (Scheme to Defraud) (ECF 6 page 63 of 86); (8) Slander of Title (ECF 6 page 72 of 86); (9) Slander of Credit (ECF 6 page 72 of 86); (10) Infliction of emotional distress (page 73 of 86); (11) Federal RICO 18 U.S.C. §§ 1964, 1962©, 1962(a), 1962(d) (ECF 6 pages 73-77 of 86); and, (12) Exemplary Punitive Damages (ECF 6 page 77 of 86). While many of these Counts are obviously not recognized causes of action in Maryland, they are definitive proof of the failure of the Plaintiffs to plead in conformity with FRCP Rules 8 and 10.

For instance, despite the allegations, Plaintiff's claims appear to be challenging their default by the servicing in 2013 to 2014, it remains unclear in the Amended Complaint whether Plaintiffs admit or deny their current default and whether it also challenges the right of the current holder and the Substitute Trustees to foreclose in the State Foreclosure Action. Likewise, there is no way to decipher the very nature of the various causes of action Plaintiffs assert because in the body of the Amended Complaint there are what appears to be the following  claims of  (1) Judicial injustice  claiming a violation of 42 USC §1983, violation of Article 5, 14  of the US Constitution and Md Real Property Article §§14-201 and 7-101 (ECF 6 page 28 of 860); (2) Injunctive relief

ECF 6 (page 31 of 86, and 78 of 86); (3) Violation of the FDCPA 15 USC §1692 et seq (ECF 6 pages 34 of 86, 61 of 86, 66 of 86 and 72 of 86); (4) Violation of Truth in Lending Act (ECF 6 page 41 of 86 and 62 of 86 and 72 of 86); (5) Jurisdiction (ECF 6 page 42 of 86); (6) Breach of Contract (p ECF 6 age 62 of 86, 68 of 86, and 72 of 86 ); (7) Fraud (Scheme to Defraud) (ECF 6 page 63 of 86); (8) Slander of Title (ECF 6 page 72 of 86); (9) Slander of Credit (ECF 6 page 72 of 86); (10) Infliction of emotional distress (ECF 6 page 73 of 86); (11) Federal RICO 18 U.S.C. §§ 1964, 1962©, 1962(a), 1962(d) (ECF 6 pages 73-77 of 86); (12) Wrongful Foreclosure (Compl., ECF 6 page 69 of 86); and, (13) Exemplary Punitive Damages (ECF 6 page 77 of 86). They are not in individual counts nor in captioned headings and fail to allege which alleged defendant did what and when. Indeed the unsubstantiated claims are premised upon fact-less conclusions, and appear to be strewn about the amended complaint at different places and mixed in with other causes of action.

Alternatively, under Federal Rules if the Court believes that dismissal is not yet warranted that parties can proceed under Rule 12(e), then the Court could grant the dismissal with leave for the Plaintiffs to amend the complaint one last time so it complies with pleading rules. Under Rule 12(e), "[a] party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." When a "'defendant is unclear about the meaning of a particular allegation in the complaint, the proper course of action is not to move to dismiss but to move for a more definite statement.'" *Potts v. Howard University*, 269 F.R.D. 40, 42 (D.D.C. 2010) (quoting *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 725 (7th Cir. 1986)). Although Rule 8(a) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' the complaint must be detailed enough to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Dorsey v. American Express*

*Co.*, 499 F. Supp. 2d 1, 3 (D.D.C. 2007) (alteration in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted)); see, e.g., *Fraternal Order of Police v. Library of Congress*,692 F. Supp. 2d 9, 20 (D.D.C. 2010) ("Because the Court cannot ascertain what the [plaintiff]'s promotion-related claim is, it cannot find that defendants are able to respond to it.").

Regardless, because these causes of action fail to sound in uniform Counts, fail to assert timeframes or who did what, and are dispersed in a smothering throughout various parts and pages of the Amended Complaint, the Amended Complaint should be dismissed as being unable to be addressed.

Secondly, the Amended Complaint violates FRCP 10(b) by improperly lumping allegations arising out of separate transactions together in each claim for relief. See FRCP Rule 10(b)[3]. Here, the causes of action seem to mix claims involving the origination of the loan, transfers of the loan, the foreclosure of the loan, and the possession action asserted against all the defendants, which occurred subsequent to the ratification of the foreclosure sale by the State Court. The RCO Defendants, would have to assert that Plaintiff's claims for pre- ratification alleged misconduct and post-ratification/but pre-possession alleged misconduct should be pled as separate claims for relief as should the actions against each servicer and or each investor, when that servicer and or investor serviced and or maintained the loan. To make generalities as to "successor liability" arising and attributed solely to that of being an assignment and various separate transactions associated with the loan throughout its history, tantamount to improper lumping pursuant to FRCP

---

[3] Rule 10. Form of Pleadings provides in part:
"(b) Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence— and each defense other than a denial—must be stated in a separate count or defense. " (Bold emphasis added)

10(b) and candidly prevents the ability to appropriately respond. Obviously, the Defendants weren't involved in the origination or the initial assignments of the loan, yet all are grouped in what appears to be alleged claims by the Plaintiffs with those defendants who were involved in those aspects of the loan. Clearly, there is lumping under the Rule.

Accordingly, for these very reasons, while not looking at each alleged cause of action, the First Amended Complaint should be dismissed, and the dismissal should be without leave to amend as it does not appear after the amended complaint that the Plaintiffs will be able to successfully plead any cause of action in light of the foreclosure sale being ratified by the State Court.

**B.** **The individual claims fail to state a cause of action upon relief can be granted.**

Depending on how one reads the Amended Complaint, it appears that there are either 9 causes of action (the Amended Complaint (hereinafter "Compl.") ECF 6 page 2 of 86) or there are 11 causes of action (Compl. Page 78 of 86) or when viewed in their totality, there may be more than 11 causes of action, as it is just impossible to translate what the individual claims are from the Amended Complaint and how it is drafted. In an effort to decipher this Amended Complaint, these Defendants will address what they believe are 11 claims, which all fail to assert any action upon which relief can be granted.

These Defendnats assert the following arguments in support of their Motion to Dismiss:

**Count I**         **Judicial injustice**

It appears if the undersigns reading of the Amended Complaint is correct that the Plaintiffs are claiming a violation of 42 USC §1983, violations of Article 5 and 14 of the US Constitution and Md Real Property Article §§14-201 and 7-101 (ECF 6 Compl. pages 25 thru 31 of 860). In order to state a § 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct

"deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). None of these elements are raised by the Plaintiffs and the Plaintiffs merely assert conclusory statements without any factual substantive allegation answer the question of who what when.

Section 1983 does not create any independent substantive right; but rather is a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). A civil rights complaint must contain "specific allegations of fact that indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient" to state a claim under § 1983. See *Morpurgo v. Inc. Village of Sag Harbor*, 697 F.Supp.2d 309, 341 (E.D.N.Y. 2010) (citations omitted). Here once more, the Plaintiffs do nothing more than make broad, simple, and conclusory statements with no factual basis in no time frame only that the actions of the Defendants amounts to some undefined constitutional deprivation.

Secondly, a §1983 claim must be brought within the appropriate statute of limitations, which is determined by state law. In the State of Maryland, the statute of limitations for actions brought pursuant to § 1983 is three years. See Md. Courts and Judicial Proceeding Art. §5-101 (Maryland has a general three (3) year statute of limitations); *Owens v. Okure*, 488 U.S. 235, 249–51 (1989) (the most appropriate statute of limitations in a § 1983 action is found in the "general or residual [state] statute [of limitations] for personal injury actions") See *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law."). "While state law supplies the statute of

limitations for claims under § 1983, federal law determines when [the] . . . claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." *Bratton-Bey v. Straughan*, Civil Action No. DKC 13-1964, 2014 U.S. Dist. LEXIS 12623, at *27 (D. Md. Jan. 31, 2014) *( citing Soc'y Without A Name v. Virginia,* 655 F.3d 342, 348 (4th Cir. 2011)); ; Rene v. Jablonski, 2009 WL 2524865, *5 (E.D.N.Y. Aug. 17, 2009) ("[F]ederal law governs the question of when a Section 1983 claim accrues. Under federal law, 'the time of accrual [is] that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" (alteration in original) (citations omitted)).

Here the original Foreclosure Action was initiated by the Substitute Trustees on April 8, 2016. As the civil rights action is premised on the three (3) year Maryland statute of limitations (Md. Cts & Jud. Proc. Art. §5-101), then the statute ran April 8, 2019. As this action was not brought until April 23, 2021, then the claim is barred by limitations and thus moot.

Even if this claim were not deemed moot, this cause of action appears to chastise the bench of the Circuit Court of Baltimore County and its clerks for their alleged respective unjust and unequitable treatment of the Plaintiffs  (ECF 6 Compl. ¶4.12) and how the judiciary ruled on Plaintiffs motions and seemingly abused its discretion (ECF 6 Compl. ¶4.15). Plaintiffs incoherent diatribe then continues to assert that counsel for the Substitute Trustees and the secured parties  then conspired to deny Plaintiffs due process and that their foreclosure was defective. ( ECF 6 Compl. ¶4.19). Obviously, the conclusory conspiracy is irrelevant to  a violation by the State Court bench of the Plaintiffs civil rights which is in-artfully drafted at best. Further the alleged conspiracy delineates the generic "defendants" and does not say who are what or even how.

Initially, there is no cause of action for "judicial injustice" in Maryland. Even assuming that the Court were to qualify the cause, as a constitutional violation, there are no factual allegations of any action undertaken by the named Defendants which in any fashion violated any of the United States Constitution, the Maryland Bill of Rights or any statutory provision and that the statute of limitations would be a bar.. All the Plaintiff does is make broad factless generalizations and conclusions none of which amount to any cause of action.

There are normally two types due process claims: procedural due process and substantive due process. Procedural due process is "traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)). Substantive due process is "'[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" *Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216* (6th Cir. 1992) (quoting Comment, Developments in the Law—The Constitution and the Family, 93 Harv. L. Rev. 1156, 1166 (1980)). However, Plaintiffs appear to assert that they are not asserting a claim under either of these well-known due process doctrines. They contend that Maryland foreclosure procedure failed to allow them the right to have access to the Courts and a foreclosure action does not provide an appropriate forum for Plaintiff's remedies at law. What Plaintiffs fail to address is the right of the Plaintiff to make such a challenge outside of the foreclosure proceeding. Fundamentally, the current case highlights the elemental principle underlying Maryland foreclosure procedure. A "power of sale foreclosure is intended to be a summary, in rem proceeding[,]" *Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705, 726, 922 A.2d 538 (2007). It is merely the termination of the right of redemption by a

borrower of their interests in the real property. Second, as the action is "peculiarly within a court of equity's jurisdictional powers," *Wells Fargo*, 398 Md. at 728, 730. Title 14 of the Maryland Rules implements these precepts by providing a summary procedure for a foreclosure pursuant to a power of sale but requiring lenders to attest to the validity of their lien and lien instruments. If a lender cannot establish, for whatever reason, the validity of its lien, it must pursue another avenue to assert its rights under the mortgage. Here, the lien was validated and the State Circuit Court found there was a right to foreclose. Here the Plaintiffs do not make any substantive or procedural due process arguments and even if they had, they had to seek a stay of the foreclosure proceeding to assert these arguments. Instead, they did not and allowed that foreclosure to be ratified and become a final order. This final order cannot be collaterally attacked under basic claim preclusion doctrines. As such the instant claim is moot.

While a foreclosure proceeding is not a general civil litigation, it is a summary in rem proceeding to foreclose limited to the issue of the divesture of the right of redemption. As such there are only three opportunities to challenge a foreclosure proceeding. *Greenbriar Condo. v. Brooks*, 387 Md. 683, 878 A.2d 528 (2005). First the interested party may challenge the right of the substitute trustees to foreclose of the validity of the lien instrument (Md. Rule 14-211). Once the sale has occurred this challenged is ended and the interested party may only challenge procedural irregularities in how the sale occurred by taking exception to the sale or for fraud (Md Rule 14-305(d). Once the Court has ruled and ratified the sale, these challenges or ended and the interested party may only challenge by exceptions the monetary claims of the Substitute Trustees as to the audit. Once again, the summary nature of the proceeding is rather narrow and for challenges outside of these area including constitutional challenges, a party must seek a stay of the proceedings prior to the foreclosure sale and resulting ratification, which generally

requires the interim bond and payments into the Court Registry. Then the challenging  party then proceeds in a separate action. As this was not done by the Plaintiffs and the sale was ratified then the claim must be dismissed.

**Count II  Wrongful Foreclosure**

Irrespective of the Plaintiff reciting California law (ECF 6 ¶28.4 pg 69 of 86), there is no recognized tort or claim of wrongful foreclosure in Maryland. See Pleading Causes of Action in Maryland 4th Ed. 2008; See comment in unreported decision in  *Jean-Baptiste v. Saxon Mortg. Servs.*, No. 886, 2017 Md. App. LEXIS 524, at *7 (Spec. App. May 17, 2017)[4]. As there is no such cause of action, then the question is whether there was a right to foreclose or an effective power of sale in the security and whether that right and power was either challenged in the foreclosure proceeding pursuant to Md Rule 14-211 or otherwise adjudicated before the sale occurred. If it was then the issue was decided or it was otherwise waived and would be barred by claim preclusion doctrines of collateral estoppel or res judicata. See  *Devan v. Bomar*, 225 Md. App. 258, 272, 123 A.3d 686 (2015) (citing *Bates v. Cohn*, 417 Md. 309, 328, 9 A.3d 846 (2010).).

In *Fisher v. Federal National Mortgage Ass'n.*, 360 F. Supp. 207, 211 (D.Md.1973), the United States District Court described the Maryland Practice. "Under Maryland foreclosure procedures, plaintiffs are afforded two separate opportunities in which they may challenge in a state court the legality of the foreclosure. First, ... plaintiffs may move prior to sale to enjoin the foreclosure. Secondly, after the sale but before ratification, plaintiffs have the opportunity to file objections to the sale." In the pre sale procedure, Maryland Rule of Procedure 14-211 spells out the

---

[4] *Jean-Baptiste v. Saxon Mortg. Servs.*, No. 886, 2017 Md. App. LEXIS 524, at *7 (Spec. App. May 17, 2017) is not being cited as either precedent within the rule of stare decisis or as persuasive authority, but as a foreclosure case in which there was a collateral challenge and dismissal premised upon the initiation of the foreclosure action.

procedure for timely challenging a threatened foreclosure after foreclosure proceedings have been filed but before a foreclosure sale has been conducted. The relief sought is the granting of a motion to stay the sale of the property and to dismiss the foreclosure action. *Thomas v. Nadel*, 427 Md. 441, 443-44 n.5, 48 A.3d 276 (2012).

In this case, the Circuit Court found there to be a right to foreclose as a result of the loan default denied the motion and allowed the sale to proceed. Clearly, such a finding amounts to res judicata of the claim for wrongful foreclosure.

Secondly, the Order to Docket was filed on April 8, 2016 and served April 16, 2016. If the Plaintiffs believed there to be wrongful foreclosure action filed then they had three (3) years to filed the instant action if one were permitted at all. As the instant action was not docketed until after the sale was ratified and beyond the three (3) year Maryland statute of limitations in effect then the claim regardless would be barred by res judicata and or moot because of limitations.

Here, as there is no such tort, then there can be no cause of action. As such the claim must be dismissed with prejudice

## Count III    Injunctive Relief

The claim for injunctive relief, highlights that the real nature of Plaintiff's present claims are nothing more than a collateral challenge the foreclosure action. First no motion for injunctive relief was every provided to these Defendants when the documentation was improperly received.  Secondly, this Court properly and already dealt with the claim in its memorandum opinion dated May 5, 2021 finding that Plaintiff would not be successful  relative to the standards set forth in  *Winter v. NRDC, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008).

A plaintiff seeking injunctive relief must establish that they are "likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id Winter v. NRDC, Inc., 555 U.S. at 20.Here, the Court found as a matter of law in its holding denying the temporary restraining order that there could be no irreparable harm sustained by the Plaintiff or that the balance of equities tips in his favor of the Plaintiff , or that the Plaintiff would succeed on the merits because "[I]t appears that the foreclosure proceedings over the Property have already concluded." *Brown v. Frazier*, No. JKB-21-1000, 2021 U.S. Dist. LEXIS 89577, at *3 (D. Md. May 10, 2021). Here there is a clear indication that claim preclusion of res judicata would be a bar.

Similarly, since the proper course of action is to seek injunctive relief in the foreclosure proceeding pursuant to Md. Rule 14-211 to "stay and dismiss" see infra, and this was sought on November 14, 2016 (Exhibit A Baltimore City No 34/0) by the Plaintiffs, and was thereafter denied by the Circuit Court with the foreclosure sale occurring, then obviously there would be collateral estoppel and or res judicata as to the instant claim.

Regardless the instant claim has become moot and must be dismissed with prejudice.

**Count IV The violation of the § 1692e of Fair Debt Collection Practices Act**

The Plaintiffs fail to assert what actions amounted to the "Defendants" using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To state a claim for relief under the FDCPA a plaintiff must sufficiently allege "(1) he or she was the object of a collection activity arising from a consumer debt as defined by the FDCA; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant

engaged in an act or omission prohibited by the FDCPA . . ." *Goodrow v. Friedman & MacFadyen, P.A.*, 2013 U.S. Dist. LEXIS 105395, at 27 (E.D. Va. July 26, 2013). The Complaint fails to satisfy the elements required to sustain a claim under the FDCPA.

First and foremost, a foreclosures purpose is to "foreclose" the right of redemption of all interested parties interest in a property.

Secondly, in *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 203 L.Ed.2d 390 (2019), the Court held, that a business engaged in no more than non-judicial foreclosure proceedings is not a "debt collector" under the FDCPA. Clearly, Obduskey negates the fact that the defendants are debt collectors when they are enforcing security interests in a non-judicial foreclosure action, except for the limited purpose of §1692f(6).

Third, Defendants further contend that McCray lacks standing to pursue her claims because she has failed to allege a cognizable injury-in-fact, as defined in the Supreme Court's decision in *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Indeed, the Supreme Court reaffirmed that a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing those elements. *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. Sofar they have not met their burden.

In *Spokeo*, the Court reiterated that to satisfy the first element of the *Lujan* test, a plaintiff must establish that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" 136 S.Ct. at 1548 (quoting Lujan, 504 U.S. at 560, 112 S.Ct. 2130). To be "particularized," an injury "'must affect

the plaintiff in a personal and individual way,' " *Spokeo,* 136 S.Ct. at 1548 (citing Lujan, 504 U.S. at 560 n. 1, 112 S.Ct. 2130). A "concrete" injury, on the other hand, is one that is "'real,' and not 'abstract.' ". *Spokeo,*136 S.Ct. at 1548 (citing Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967)).

Primarily, Plaintiffs have been discharged of their debt as a result of the foreclosure. Here the only state action was the condemnation of the collateral - the Plaintiffs the right of redemption therein and obtaining possession. No debt was being collected against the Plaintiffs as there has been no petition for to pursue any deficiency as there has not yet been any post sale audit.

Finally, More broadly, however, the Defendants argue that, because the instant claims are premised on the same argument raised in the foreclosure action and rejected by the Circuit Court, Plaintiffs' claims here are barred by res judicata or collateral estoppel. In a somewhat related argument, Defendants also content argue that, under the Younger abstention doctrine, this Court should abstain from exercising jurisdiction over this action so as not to interfere with the pending state foreclosure action. The Younger abstention doctrine requires a federal court to abstain from interfering in state proceedings, even if jurisdiction exists, when there is: "(1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal . . . claim advanced in the federal lawsuit." *Laurel Sand & Gravel, Inc*. 519 F.3d at 165 (quoting *Moore v. City of Asheville*, 396 F.3d 385, 390 (4th Cir. 2005)). *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994).

Alternatively, the claim prelusion doctrine of res judicata negates the instant action. Res judicata and collateral estoppel are affirmative defenses. See Fed. R. Civ. P. 8(c)(1); see also

*Georgia Pac. Consumer Prod., LP v. Von Drehle Corp.*, 710 F.3d 527, 533 (4th Cir. 2013). Although it is rare to grant dismissal based on an affirmative defense, dismissal may be warranted when the "facts sufficient to rule on an affirmative defense are alleged in the complaint" or in other documents properly considered under Rule 12(b)(6). *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Here, the fact that the foreclosure sale has occurred, the final order of ratification has been issued and that the motion seeking possession has been granted, as this Court concluded in its Memorandum Order as to the temporary injunctive relief recited (ECF 7). Obviously. Claim preclusion is applicable to the instant claim as well as all the others.

Under Maryland law, res judicata, or claim preclusion, "applies when (1) the present parties are the same or in privity with the parties to the earlier dispute, (2) the claim presented is identical to the one determined in the prior adjudication, and (3) there has been a final judgment on the merits." *Capel v. Countrywide Home Loans, Inc.*, No. WDQ-09-2374, 2010 WL 457534, at *3 (D. Md. Feb. 3, 2010) (citing *Anne Arundel County Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005)). Regarding the first prong, it is undisputed that this case involves the same parties as in the state foreclosure action. See *Prudencio v. Capital One, N.A.*, No. PWG-16-2693, 2016 WL 6947016, at *2 (D. Md. Nov. 28, 2016) (citing *Jones v. HSBC Bank USA, N.A.,* No. RWT 09CV2904, 2011 WL 382371, at *5 (D. Md. Feb. 3, 2011) (finding that "because all defendants share a mutuality of interest with respect to the validity of the foreclosure judgment, the first element of the claim preclusion test is met")). "Privity for res judicata purposes involves a person so identified in interest with another that he represents the same legal right." *FWB Bank v. Richman*, 354 Md. 472, 498 (1999) (quoting *In re Matter of Wilcher*, 56 B.R. 428, 438 (Bankr. N.D. Ill. 1985)).

Likewise, as to the second prong, Maryland uses the transaction test to determine whether the claims in this case are identical to those in the prior proceeding. See *Kent Cnty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 238 (Md. 1987). "Under the transaction test, a 'claim' includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the claim arose." *Boyd v. Bowen*, 806 A.2d 314, 325 (Md. Ct. Spec. App. 2002) (citing *FWB Bank v. Richman*, 731 A.2d 916, 928 (Md. 1999)). Clearly all arise out of the same loan transaction and claims Thus, the second prong is satisfied. See *McCreary v. Benificial Mortg. Co. of Maryland*, No. AW-11-CV-01674, 2011 WL 4985437, at *4 (D. Md. Oct. 18, 2011) (dismissing on res judicata grounds plaintiff's common law claims, inter alia, for fraud, fraudulent misrepresentation, intentional infliction of emotional distress, and gross negligence because "Plaintiff had a fair opportunity to present claims against Defendants during the prior foreclosure proceedings").

"With regard to the [third] element, 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect,' based on factors such as whether the parties were heard in the issue and whether the decision was appealable." *Graves v. OneWest Bank, FSB*, No. PWG-14-1995, 2015 WL 2452418, at *5 (D. Md. May 20, 2015) (quoting *Morgan v. Morgan*, 68 Md. App. 85, 92 (Md. Ct. Spec. App. 1986),(quoting Rest. 2d (Judgments) § 13 (emphasis in Morgan))). "In a foreclosure proceeding, . . . if the defendant indeed does challenge the right to sell prior to the sale and the court actually determines that right after a proper hearing, that issue cannot be relitigated in a subsequent phase of the action." *Id*. (quoting *Morgan*, 68 Md. App. at 92). Accordingly, the Circuit Court's denying the motion to stay and dismiss over the Plaintiff's opposition in the foreclosure proceeding, and then having the foreclosure sale ratified, constitutes a final judgment for res judicata purposes.

See *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md.App. 504, 525, 852 A.2d 1029 (2004)(Maryland courts have held that pendency of an appeal does not affect the finality of a judgment for res judicata purposes). Also see. *Morgan*, 510 A.2d at 270; *Talley v. Ocwen Loan Servicing*, No. 16- CV-389, 2016 WL 1321427, at *2 (D. Md. Apr. 5, 2016), (finding res judicata applicable in a pending foreclosure action where "the state court has already permitted the parties to schedule a foreclosure sale and denied Plaintiff's objections"), aff'd in part, vacated in part on other grounds, remanded sub nom. *Talley v. Ocwen Loan Servicing*, LLC, No. 16-1478, 2017 WL 218858 (4th Cir. Jan. 19, 2017).

Finally, if the docketing of the foreclosure action was the initialization of the claimed debt collection in April of 2016, then clearly the statute of limitations is a bar to the claim.

Regardless, since Plaintiffs fail to delineate what the nature of the debt collection was the lack of specificity as to what whom and when  should be the basis to dismiss the instant action.

## V. Infliction of Emotional Distress

The Amended Complaint (ECF 6 Compl. Page 73 of 86) speaks of a claim for emotional distress. As there is no associated cause of action for this relief, the claim must be dismissed without leave to amend.

## VI Violation of Truth in Lending.

The Amended Complaint (ECF 6 Compl. Page 72 of 86) merely recites a statutory section/citation with out any allegations or as to which Defendnats did what. For this reason no claim is alleged  and the allegation must be dismissed. Even so, these Defendnats were not parties to the origination and thus they would not be liable in providing any documentation concerning the loan to the Plaintiffs. Obviously this is the prime example of the conclusory nature of the pleadings filed by the Plaintiffs and why they must be dismissed. Even if they were involved in

the origination which they were not, as the loan has now been foreclosed upon there can be no claim as the claim is moot by claim preclusion doctrines, infra.

Accordingly, the claim must be dismissed.

**VII Claim to Defraud**.

Each Defendant has been charged with fraud, yet there is no factual pleading. A common law fraud claim must meet the particularity requirements of Rule 9(b). *Muller-Paisner v. TIAA*, 289 Fed. Appx. 461, 463 (2d Cir. 2008). Here, Plaintiffs fraud claim does not comply with the notice and specificity requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "in all averments of fraud …, the circumstances constituting fraud … shall be stated with particularity." The "circumstances" refer to "the time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what was obtained thereby." *All Risks, Ltd. v. Equitable Life Assurance Society*, 931 F. Supp. 409, 419 (D. Md. 1996). In their Amended Complaint (ECF 6) Plaintiffs have not identified the dates and times at which the misrepresentations allegedly occurred, the identity of the person making the misrepresentations, or any of the contents of the alleged misrepresentations.

Because Plaintiffs are unable to satisfy all five elements of a fraudulent misrepresentation claim, the claim must be dismissed. In Maryland, to establish a claim of fraudulent misrepresentation, the plaintiff must show: (1) that the representation was false; (2) that its falsity was either known to the speaker, or that the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured; (4) that such person justifiably relied upon the misrepresentation such that, absent the misrepresentation, he would not have done the thing from which the injury resulted; and (5) actual damages as a direct result of the fraudulent

misrepresentation. *Miller v. Fairchild Industries, Inc.,* 97 Md. App. 324, 341-42, 629 A.2d 1293 (1993), cert. denied, 333 Md. 172, 634 A.2d 46 (1993). See *Froelich v. Erickson*, 96 F. Supp. 2d 507, 522 (D. Md. 2000).

Here, Plaintiffs do not satisfy any of the elements of a misrepresentation or an attempt to defraud and as such the claim must be dismissed

## VIII    Slander of Title

"The elements of slander of title are: (1) the uttering of slanderous words in regard to the title of someone's property; (2) the falsity of the words; (3) malice; and (4) special damages. *Agbro v. Am. Partners Bank*, No. GJH-19-1606, 2020 U.S. Dist. LEXIS 54372 (D. Md. Mar. 26, 2020). Plaintiffs fail to allege factual allegations supporting each element of a slander of title claim Plaintiffs fail to allege factual allegations demonstrating that any of the Defendants  made slanderous statements regarding Plaintiffs ' title to property, that the statements were false, or any special damages suffered as a result. (ECF 6 Compl. Page 72 of 86). In fact, Plaintiffs Amended Complaint contains little more than a conclusory restatement of the elements of a claim for slander of title, which is insufficient to state a such a claim in federal court. See *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965

Accordingly. the failure to plead any of the elements necessitates the  dismissal of the claim.

## IX Slander of Credit.

Plaintiffs fail to assert any facts that, if proven, demonstrate any of the five necessary elements for slander. Plaintiffs merely assert that the actions of the Defendnats impacted their good credit. (¶ECF 6 34.1 Compl. Page 72-73 of 86). Here the State Court found as a matter of fact that

the secured party had a right to foreclose on the loan as a result of a payment default. Such a finding is res judicata as to the claim.

Furthermore, under Maryland law, for a claim for defamation (which includes both libel and slander), a plaintiff bears the burden to prove five elements: (1) a defamatory communication, (2) publication to a third person, (3) falsity, (4) fault, and (5) harm. See, e.g., *Gooch v. Maryland Mechanical Systems, Inc*., 81 Md. App. 376, 567 A.2d 954, 959 (Md. Ct. Spec. App. 1990); *Montgomery County Assoc. of Realtors Inc. v. Realty Photo Master Corp*., 878 F. Supp. 804, 819 (D. Md. 1995). Plaintiff's Amended Complaint (ECF 6) fails to allege any facts that, even under the most liberal of interpretations, would permit this claim to defeat a properly filed motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (requiring that a complaint must allege "enough facts to state a claim to relief that is plausible on its face"). Plaintiff fails to assert any facts that, if proven, demonstrate any of the five necessary elements for slander. Accordingly, Plaintiff's Amended Complaint therefore must be dismissed with prejudice.

## X Breach of Contract

Once again Plaintiffs contend that the Defendants somehow breached their contract (presumably the original deed of trust and note though they don't explicitly delineate wha contract was breached). They do not assert when or who caused the breach. See ECF 6 ¶ 31.1 (Compl. pages 72 of 86.) What they contend is that the debt was zero Id.

Obviously, when the Order to Docket was filed the Plaintiff was provide with a Notice of Intent to Foreclose document along with the affidavit of debt. When Plaintiffs challenged the note in their motion to dismiss they had to assert any claim which validated their contention that the claimed sum was not due. When the State Circuit Court adjudicated  that,  the secured party had a

right to foreclose as a result of the payment default, which the State Court found that the debt was due. This adjudication is now res judicata.  Indeed,  if the Plaintiffs contend that there is nothing due on the debt then their argument is with the State Court at the audit stage of the proceeding not in this Court alleging a breach of contract on a deed of trust that has now been foreclosed upon and for which sale has now been ratified.

Once again, the claim fails to establish any of the required elements of a claim for breach of contract and does not recite which of the defendants alleged breach the contract. This factor coupled with the ratification of the sale necessitates dismissal of the claim with prejudice.

## XI Conspiracy and  RICO

In different aspects in varying paragraphs alleges  a RICO violation under 18 U.S.C.§§ 1964, 1962(a), 1962 (c)  and 1962(d). ECF 6 Compl. ¶¶36.1 to 39.10 pages 73 to77 of 86.

Here, the Amended Complaint fails to plead the alleged fraud committed by these two Defendants with the requisite degree of particularity required under Fed. R. Civ. P. 9(b). Fed. R. Civ. P. 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." In alleging fraud, the complaint must allege the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 784 (4th Cir. 1999).  Fraud is asserted as predicate acts in a civil RICO claim, each must be pled with particularity, pursuant to Rule 9(b). See *Scott v. WFS Fin., Inc*., Civil Action No. 2:06cv349, 2007 U.S. Dist. LEXIS 3967, 2007 WL 190237, at *5 (E.D.Va. Jan. 18, 2007) (citing *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir.1989)). "Rule 9(b) requires pleading the time, place, and content of the false representations, the person making them, and

what that person gained from them." Id. (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

In this case, the Plaintiffs make nothing but conclusory allegations without any particularity  as to who  what or when, have has failed to allege that any injuries they alleged suffered were proximately caused by the predicate acts of racketeering activity that make up the violation of § 1962(c). To state a civil RICO claim, Plaintiff is required to show that a RICO predicate act "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992). Proximate cause for civil RICO purposes requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* A link that is "too remote," "purely contingent," or "indirec[t]" is insufficient. *Id.* at 271. As the Supreme Court has made clear, "in the RICO context, the focus is on the directness of the relationship between the conduct and the harm." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 12, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010); see also *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."). Here, there is nothing to suggest that the RICO Defendants' predicate acts led directly to Plaintiff's injuries.

Without more the Plaintiffs RICO and conspiracy claims are without merit and fail to state any claim upon which relief can be granted. Accordingly, the conspiracy and RICO claims must be dismissed with prejudice.

## XII. State Law Claims

As a general catch all and since the claims are unable to be reasonable determined as to which effect which Defendants then this Court should elect not to exercise supplemental jurisdiction over the remaining state claims, which account for what appears to be the the remaining claims in the Amended Complaint as best as can be deciphered.. Under 28 U.S.C. § 1367(a),

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court "enjoys wide latitude in determining whether or not to retain supplemental jurisdiction over state claims." *Crosby v. City of Gastonia*, 635 F.3d 634, 644 n. 11 (4th Cir. 2011).

Here, Plaintiffs seems to argues that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity of citizenship), and 18 U.S.C. § 1964(c) (RICO). ECF No. 6 at 3. All claims related to 29 U.S.C. § 1331, the FDCPA, Truth in Lending and 18 U.S.C. § 1964 should be dismissed and the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and should dismiss those claims with prejudice as they have been effectively dealt with already in state court as they have been barred under principles of res judicata and/or collateral estoppel.

## CONCLUSION

As detailed in this memorandum, Plaintiff has failed to state a claim against these Defendants and their claims are also not able to be remediated by subsequent amendments. Accordingly, the Complaint and this action should be dismissed in its entirety with prejudice.

Respectfully Submitted,

Samuel I. White, PC
/s/ Robert H. Hillman
Robert H. Hillman, MD No. 06910
6100 Executive Blvd Ste #400
Rockville, MD 20852
Tel  301-804-3385
Fax 301-838-1954
rhilllman@siwpc.com
Attorney for Defendants Farnsworth & Hillman

## CERTIFICATE OF SERVICE

I hereby certify that I have this 29th day of July, 2020, I have electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which send a notification of such

filing (NEF) to the following parties:

Chevera Brown-McLean
Clint McLean
2023 Case Road
Baltimore, Maryland, 21222
Plaintiffs

American Mortgage Investment Partners Management LLC
P.O. Box 2741
Seal Beach, CA 90740
Defendant

FCI Lenders Services Inc.
8180 East Kaiser Blvd.
Anaheim Hills, CA 92808
Defendant

John Ansell III Esquire
Christine N. Johnson Esquire
Brock & Scott PLLC
7546 Standish Place
Suite 115
Rockville, MD 20855
For Defendants Robert E. Frazier, Gene Jung, Laura D. Harris,
Thomas W. Hodge, Thomas J. Gartner, Robert M. Oliveri,
David M. Williamson, Keith M. Yacko, Christine Johnson

Mortgage Electronic Registration Systems Inc.
3300 S.W. 34th Avenue Ste 101
Ocala FL 34474-7448
Defendant

Kondaur Capital Inc.
c/o CSC-Lawyers Incorporating Service Company
Resident Agent
7 St. Paul Street Ste 820
Baltimore, MD 21202
Defendant

SunTrust Mortgage Inc.
c/o CSC-Lawyers Incorporating Service Company
Resident Agent
7 St. Paul Street Ste 820
Baltimore, MD 21202
Defendant

Wilmington Savings Fund Society FSB
d/b/a Christiana Trust, not in its individual
capacity but solely in its capacity
as Owner Trustee of Matawin Ventures Trust Series 2016-4
Address unknown

Wilmington Savings Fund Society FSB
d/b/a Christiana Trust, as Owner Trustee
of Residential Credit Opportunities Trust III
c/o American Mortgage Investment Partners Management LLC
Asset Manager
P.O. Box 2741
Seal Beach, CA 90740
Defendant

Residential Credit Opportunities Trust III
c/o American Mortgage Investment Partners Management LLC
Asset Manager
P.O. Box 2741
Seal Beach, CA 90740
Defendant

<u>/s/ Robert H. Hillman</u>
Robert H. Hillman